# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re PALMDALE HILLS PROPERTY, INC., et al., <br><br>               Debtors. <br> SUNCAL MANAGEMENT, LLC, <br><br>               Appellant, <br><br>      v. <br><br> JOINT COMMITTEE OF CREDITORS HOLDING UNSECURED CLAIMS, <br><br>               Appellee. | Case No. SACV 12-00978 DMG <br> Bankruptcy Case No. 8:08-bk-17206-ES <br> **ORDER RE BANKRUPTCY APPEAL** |

   This matter is before the Court on an appeal from the Bankruptcy Court. The Court deems this matter suitable for decision without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 8012-7. Having duly considered the respective positions of the parties, the Court now renders its decision. For the reasons set forth below, the judgment of the Bankruptcy Court is AFFIRMED.

\\

\\

# I.

# **FACTUAL BACKGROUND**

SunCal Century City, LLC (the "Debtor") owned 2.4 acres of undeveloped real property located at 10000 Santa Monica Boulevard in Santa Monica, California at the commencement of its bankruptcy case. The Debtor planned to develop a forty-four story luxury condominium on the premises ("the "Project"). At the time, the sole member of the Debtor was SunCal Century City Member LLC, and the sole member of SunCal Century City Member, LLC was Lehman SunCal Real Estate Fund, LLC. Lehman SunCal Real Estate Fund, LLC is, in turn, made up of two members, LBREP II/SunCal Land Fund Member, LLC, and SunCal Communities II, LLC ("SunCal II"), with a 90% and 10% interest, respectively.

On March 19, 2009, SunCal Management, LLC ("SunCal Management") filed a claim in the bankruptcy court totaling $1,023,802.98, including management fees of $579,000.00, reimbursement of staff salary and expenses of $111,466.48, reimbursement of in-house legal fees of $23,450.00, reimbursement of consultants' fees of $201,762.50, and expenses relating to private jet travel of $108,124 ("the Claim"). SunCal II and SunCal Management executed a Development Management Agreement (the "Agreement") (Appellant's Excerpts of R. at 324)[Doc. ##14-16] on August 10, 2006, providing that SunCal Management would "perform, contract for or supervise all Development and Sale Services & Functions that are required in connection with the development, marketing and sale of the Project." (Agreement at ¶ 1.1.) SunCal II agreed to pay SunCal Management's management fee and expenses for the Project. Debtor did not sign the Agreement and is not a party to it.

After the execution of the Agreement, from August 2006 until January 2009, SunCal Management provided the services described. From August 2006 to August 2008, SunCal Management directly invoiced Debtor, and Debtor paid SunCal Management for its management services. (Appellant's Excerpts of R. at 233 (Declaration of Tom Rollins ¶ 8).) From August 2006 to August 2007, SunCal

Management invoiced Debtor for its expenses, and Debtor reimbursed SunCal Management directly.  (*Id.* at ¶¶ 11-15 (listing unpaid amounts and dates of services).)  In November 2008, the bankruptcy proceeding commenced.  On March 19, 2009, SunCal Management filed the Claim.  On March 16, 2012, Appellee Joint Committee of Creditors Holding Unsecured Claims (the "Committee"), filed an objection and motion to disallow the Claim, on the grounds that (1) Debtor was not a party to the written agreement with SunCal Management; (2) the fees and expenses asserted were unreasonable; and (3) SunCal Management received preferences or fraudulent transfers within the one year preceding the commencement of Century City's bankruptcy case. (Appellant's Excerpts of R. at 9, 24 (The Joint Committee Of Creditors Holding Unsecured Claims' Motion For Order Disallowing Claim No. 2 Of Suncal Management, LLC).)  SunCal Management argued that the parties to the Agreement had mutually abandoned it in favor of an implied-in-fact or express oral contract between itself and the Debtor, evidenced by the history of direct payments.

On April 17, 2012, the Bankruptcy Court issued an oral ruling.  On May 31, 2012, the court issued its findings of fact and conclusions of law (collectively, "Findings"). (Appellant's Excerpts of R. at 997.)  The Bankruptcy Court found that SunCal II, not Debtor, was obligated to pay SunCal Management according to the Agreement.  The court also found that there was no implied or quasi-contract between the Debtor and SunCal Management, and Debtor had no liability to SunCal Management.  The court then dismissed the Claim and SunCal Management filed this appeal.

## II.

## STANDARD OF REVIEW

A district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.  Fed. R. Bankr. P. 8013; *Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206, 1209 (9th Cir. 2010) (citing *Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1101 (9th Cir. 2002)).  Mixed questions of law and fact, such as whether a claim is non-dischargeable, are reviewed *de novo*.  *Hamada v. Far*

*E. Nat'l Bank (In re Hamada)*, 291 F.3d 645, 649 (9th Cir. 2002) (citing *Beaupied v. Chang (In re Chang)*, 163 F.3d 1138, 1140 (9th Cir. 1998); *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir. 1997) (*en banc*)).

"The clear error standard is significantly deferential and is not met unless the reviewing court is left with a 'definite and firm conviction that a mistake has been committed.'" *Fisher v. Tucson Unified Sch. Dist.*, 652 F.3d 1131, 1136 (9th Cir. 2011) (quoting *Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 708 (9th Cir. 2009)) (internal quotation marks omitted). A court's factual determination is clearly erroneous only if it is illogical, implausible, or lacks "support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (*en banc*) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 577, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)) (internal quotation mark omitted).

## III.

## DISCUSSION

SunCal Management makes two separate legal arguments based on the fact that it was paid directly by Debtor, rather than SunCal II, in exchange for services required by the Agreement. First, SunCal Management argues the payments show that neither party adhered to the Agreement, thus allowing an inference of mutual rescission or, at least, modification. Second, SunCal Management argues that this history of behavior was evidence of an express oral contract, or alternatively gave rise to an implied-in-fact contract. SunCal Management goes on to argue that the Bankruptcy Court misapplied *California Medical Assoc., Inc. v. Aetna U.S. Healthcare of Cal. Inc.*, 94 Cal. App. 4th 151, 114 Cal. Rptr. 2d 109 (2001), reading it to bar an implied-in-fact contract and recovery under a quasi-contract theory of unjust enrichment.

**A.    The Bankruptcy Court Did Not Err in Finding the Agreement Valid**

All parties agree that the Agreement was at one point a valid contract. SunCal Management contends that the parties subsequently rescinded the Agreement. The Bankruptcy Court did not explicitly address rescission, but it found that "[a]ll of the

categories of fees and expenses included in the Claim are expressly addressed in and governed by the Agreement." (Findings ¶ 10.) The court could not have come to this conclusion without implicitly finding that there was insufficient evidence to support the claim that the Agreement had been rescinded.

Generally, parties may rescind a contract by mutual consent. Cal. Civ. Code § 1689(a). Mutual consent can be implied by actions, but such actions must be "positive" and "unequivocal" in demonstrating the parties' intent to abandon the contract. *Pennel v. Pond Union Sch. Dist.*, 29 Cal. App. 3d 832, 838, 105 Cal. Rptr. 817, 821 (Ct. App. 1973). They must also be "inconsistent with the contract." *Id.* To find mutual consent to rescind the Agreement, then, the Bankruptcy Court would have required evidence positively and unequivocally demonstrating the parties' intent to abandon the contract. Because this issue goes to the weight of the evidence, it is an issue of fact, and it is reviewed for clear error.

The sum total of the evidence in the record relating to this issue is the Agreement and declarations of three witnesses stating that payments came directly from Debtor, rather than SunCal II. The evidence also shows that SunCal Management performed its obligations under the Agreement at all relevant times. Indeed, it is due to this performance that SunCal Management seeks to enforce its right to payment. In the end, SunCal Management did the work envisioned by the Agreement, and was entitled to be paid in accordance with the Agreement. It would be quite a leap to infer, without more, that, merely because Debtor signed the checks, both SunCal Management and Suncal II wanted to abandon their Agreement. At the very least, the Bankruptcy Court's disinclination to take such a leap was not clearly erroneous, and therefore the finding must stand.

**B.    The Finding of No Oral or Implied-in-Fact Contract Was Not Clearly Erroneous**

The Bankruptcy Court found no implied contract between Debtor and SunCal Management. (Findings ¶ 11.) In fact, the court found "no agreement obligating the

1  Debtor to pay for management fees or any of the other fees and expenses of SunCal
2  Management for which SunCal [] II is liable under the Agreement." (*Id.* ¶ 14.) To find
3  that an implied contract covered the same subject matter as an express written contract,
4  the Bankruptcy Court would have been required to find the written contract to be void or
5  rescinded. *See Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1387, 88
6  Cal. Rptr. 2d 802, 824 (1999) (citing, *inter alia*, *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d
7  605, 613, 119 Cal. Rptr. 646). That it could not do. The Agreement's validity was never
8  in question aside from the unsustainable assertion that it was abandoned by the parties to
9  that Agreement. Thus, the same facts that support a finding that the Agreement was not
10 abandoned support the finding that there was no implied contract that supplanted the
11 Agreement. The factual finding that there was no implied contract was not clearly
12 erroneous.

**C.    The Bankruptcy Court Correctly Applied *California Medical* to Bar the Unjust Enrichment Claim**

SunCal Management contends that the Bankruptcy Court incorrectly applied *California Medical Assoc., Inc. v. Aetna U.S. Healthcare of Cal. Inc.*, 94 Cal. App. 4th 151, 114 Cal. Rptr.2d 109 (2001). Given that this is an issue of law, this Court examines the issue *de novo*.

In *California Medical*, Aetna, the defendant insurance company, contracted with intermediaries to pay physicians for their work, and the intermediaries, in turn, contracted with the physicians to pay their claims. *California Medical*, 94 Cal. App. 4th at 156. When several of the intermediaries became insolvent or appeared imminently insolvent, they failed to pay the physicians, despite having received payments from Aetna for physicians' services. The physicians then sued Aetna, partially under a quasi-contract theory of unjust enrichment, to recover the amounts that the intermediaries did not pay. The court held that, as a matter of law, where there is an express written contract defining the parties' rights, there can be no action for implied-in-fact or quasi- contract. *Id.* at 172-173.

SunCal Management contends that "the equities" in *California Medical* are distinguishable from those in this case insofar as Aetna had paid the intermediaries that became insolvent whereas, here, Debtor has not paid for any services rendered by SunCal Management. *California Medical* explicitly held, however, that "[w]hen parties have an actual contract covering a subject, a court cannot—*not even under the guise of equity jurisprudence*—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Id.* at 172 (emphasis added). The equities did not factor into the decision in *California Medical*, and thus the Bankruptcy Court correctly applied its holding to this case.

## IV.
## CONCLUSION

In light of the foregoing, the judgment of the Bankruptcy Court is **AFFIRMED**. **IT IS SO ORDERED**.

DATED:   October 5, 2012

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE